IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRETT WILLIAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:24-CV-0662-D |
| VS. | § | |
| | § | |
| WALLACE FINANCE, LLC D/B/A | § | |
| EMPIRE FINANCE OF BURLESON, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this removed action arising from the debt collection practices of defendant Wallace Finance, LLC d/b/a Empire Finance of Burleson ("Empire"), the court must decide whether plaintiff Brett Williams' ("Williams'") claims are subject to mandatory, binding arbitration. Concluding that they are, the court grants Empire's motion to compel arbitration, stays the case pending the completion of arbitration, and directs the clerk of court to close the case for statistical purposes while the stay is in effect.

I

On October 20, 2022 Williams borrowed $750 from Empire. Five months later, he borrowed an additional $600, executing a promissory note ("Note") with "Empire Finance of Burleson." D. App. 6. Williams alleges that, between November 22, 2022 and July 20, 2023, Empire called him 142 times and sent him 48 text messages in an attempt to collect the debt he owed under the loans, rendering it liable on the claims asserted in this lawsuit.

The Note contains an "Arbitration Agreement" ("Agreement") that provides, *inter alia*, that "[i]f there is a Claim between you and I [sic] related to this [Agreement], either you or I may request the Claim be arbitrated." D. App. 4. It also states that "[e]ither you or I can request arbitration. If either one of us requests arbitration, the Claim must be arbitrated." *Id.* Regarding Williams' ability to reject arbitration, the Agreement states:

> I can reject this Agreement by sending a written notice to you. This notice is called a "Rejection Notice." I must receive the Rejection Notice within ten (10) days after the date of this Agreement.
>
> The Rejection Notice must be signed by me. . . .
>
> I must send the Rejection Notice to: Empire Finance of Hurst, LLC, 328 E. Carl Albert Parkway, McAlester, OK 74501.
>
> I must send the Rejection Notice by U.S. Mail or another delivery service, such as Federal Express.
>
> **THIS IS THE ONLY WAY TO REJECT ARBITRATION AND THIS AGREEMENT.** . . .
>
> If I reject arbitration, I cannot be required to go to arbitration.

*Id.* at 4-5.

In 2023, under the terms of the Agreement, Williams allegedly requested that his dispute with Empire be submitted to arbitration. But because "Empire Finance of Hurst, LLC" failed to pay the initial administrative fee of $675.00, as required by the American Arbitration Association ("AAA"), AAA declined to administer the arbitration. Pet. ¶ 31.

On January 17, 2024 Williams filed the instant lawsuit in state court, alleging claims against Empire for violation of the Texas Debt Collection Act, Tex. Fin. Code Ann. §

392.001 *et seq*. (West 2019); invasion of privacy; violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*.; violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41-17.63 (West 2021); and breach of contract.  Empire removed the case to this court and now moves to compel arbitration.[1]  Williams opposes the motion.  The court is deciding the motion on the briefs, without oral argument.

## II

Section 2 of the Federal Arbitration Act ("FAA") provides that written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3-4).  When considering a motion to compel arbitration, the court engages in a two-step process.  First, the court determines "whether the parties agreed to arbitrate the dispute." *Webb v. Investacorp, Inc*., 89 F.3d 252, 258 (5th Cir. 1996) (per curiam) (citation omitted).  "This determination involves two

---

[1]Empire's motion requests that the court dismiss the case and compel arbitration or, in the alternative, that the case be stayed pending compelled arbitration.  D. Br. 4-5.  On May 20, 2024, however, Empire filed a submission of supplemental authority citing the Supreme Court's recent decision in *Smith v. Spizzirri*,___ U.S. ___ , 144 S.Ct. 1173 (2024), and requesting that the court stay this litigation pending compelled arbitration.

considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (citations omitted).  Second, the court decides "'whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims.'"  *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc*., 473 U.S. 614, 628 (1985)).  "If there is a valid agreement to arbitrate, and there are no legal constraints that foreclose arbitration, the court must order the parties to arbitrate their dispute."  *Celaya v. Am. Pinnacle Mgmt. Servs., LLC*, 2013 WL 4603165, at *2 (N.D. Tex. Aug. 29, 2013) (Fitzwater, C.J.).  Because of the strong presumption in favor of arbitration, the party opposing a motion to compel arbitration bears the burden of proving that the agreement is invalid or that the claims are outside the scope of the agreement.  *Carter v. Countrywide Credit Indus., Inc*., 362 F.3d 294, 297 (5th Cir. 2004).

III

Williams opposes Empire's motion to compel arbitration on the following grounds: first, Empire waived its right to arbitrate under the Agreement, and, second, the arbitration provision in the Agreement is invalid because Williams rejected it.[2]  The court will address each of these arguments in turn, beginning with Williams' argument that Empire waived its

---

[2]Williams does not dispute that his claims against Empire fall within the scope of the Agreement.

right to arbitrate under the Agreement by failing to pay its portion of the AAA fees.[3]

## A

"'There is a strong presumption against' a finding that a party waived its contractual right to arbitrate, and 'any doubts thereabout must be resolved in favor of arbitration.'" *Gulf Guar. Life Ins. Co. v. Conn. Gen. Life Ins. Co.*, 304 F.3d 476, 484 (5th Cir. 2002) (quoting *Texaco Expl. & Prod. Co. v. AmClyde Engineered Prods. Co.*, 243 F.3d 906, 911 (5th Cir. 2001)); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."). "[A] party claiming that another party waived the contractual right to arbitrate bears a heavy burden to establish the claim." *Gulf Guar. Life Ins.*, 304 F.3d at 484; *see also Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1161 (5th Cir. 1986) ("It is well established that where a party asserts the right to demand arbitration during pretrial proceedings, the party later opposing a motion to compel arbitration necessarily bears a heavy burden in showing waiver.").

## B

Williams contends that the arbitration between the parties "has been 'had' in accordance with the terms of the parties' agreement[]," P. Br. 4 (quoting *Tillman v. Tillman*,

---

[3]Parties sometimes argue a waiver theory when what is actually at issue is forfeiture. But because Williams argues waiver, the court will not address whether Empire forfeited its right to arbitrate this dispute by failing to pay its portion of the AAA fees.

825 F.3d 1069, 1074 (9th Cir. 2016)), and that "this matter now belongs in court," *id.* at 3. In support, he cites a letter from the AAA addressed to "Empire Finance of Hurst, LLC," at a Grapevine, Texas address, that states: "the AAA has administratively closed this case due to non-payment by the Business" of the initial $675.00 administrative fee for the AAA.  P. App. Ex. 1.[4]

Empire replies that it is a separate and distinct legal entity from "Empire Finance of Hurst, LLC," the party to whom the AAA letter is addressed; that because the AAA letter is not addressed to Empire (the defendant in this case), the court should disregard it; that Empire is unaware of ever receiving a demand for arbitration from Williams in the first place; that Williams tried to arbitrate against the wrong entity at the wrong place, i.e., "Empire Finance of Hurst" in Grapevine, Texas; and that because Williams has not presented any evidence that Empire was provided notice of the demand for arbitration, his waiver argument fails.

## C

The court concludes that Williams has not carried his heavy burden of demonstrating

---

[4]The court is citing the record in this manner because Williams did not comply with N.D. Tex. Civ. R. 7.1(i)(1) or 7.1(i)(4) in briefing this motion.  Rule 7.1(i)(1) provides that "[a] party who relies on materials—including depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials—to support or oppose a motion must include the materials in an appendix."  Rule 7.1(i)(4) provides, in relevant part, that "[e]ach page of the appendix must be numbered legibly in the lower, right-hand corner.  The first page must be numbered as '1,' and succeeding pages must be numbered sequentially through the last page of the entire appendix (i.e., the numbering system must not re-start with each succeeding document in the appendix).'"

waiver.  Williams contends that "[a]fter months of back and forth with the Plaintiff's previous counsel and the Defendants (and their counsel), agreed to arbitrate the dispute according to the contract in dispute"; that he paid the AAA's $675.00 administrative fee; and that due to Empire's failure to pay its portion of the fees, the case was administratively closed.  P. Br. 2.  But Williams does not cite any evidence that would substantiate these assertions.  He instead includes in his appendix a letter addressed to "Empire Finance of Hurst, LLC," located in Grapevine, Texas.  He adduces no evidence, nor does he argue, that "Empire Finance of Hurst, LLC" and "Wallace Finance, LLC d/b/a Empire Finance of Burleson" are the same legal entity.  Nor does he explain why the failure of Empire Finance of Hurst, LLC to pay the $675.00 administrative fee would operate as a waiver of Empire's right to arbitrate Williams' dispute.  Accordingly, because Williams has failed to carry his burden of demonstrating that Empire waived its right to arbitrate, the court rejects Williams' waiver argument.

## IV

The court next considers Williams' argument that the Agreement is invalid.

## A

In his response, Williams contends that he "sent notice of rejection to the arbitration clause as warranted under the Agreement," P. Br. 4 (bold font and capitalization omitted); that "no valid arbitration agreement exists, or . . . the arbitration agreement is 'permissive' in nature enabling him to reject [its] enforcement," *id.* at 5; that although the Agreement states that rejection must be made within 10 days of the date of the Agreement, "such

limitations are unenforceable as it effectively calls for Mr. Williams to both agree to arbitrate then send notice of his rejection to agree to arbitrate within 10-days," *id.* at 5-6; that the arbitration clause grants each party the option to reject arbitration, making the arbitration clause itself invalid; and that

> the arbitration agreement that the movant seeks to enforce carries with it the option of either party to reject that agreement, and therefore is permissive in nature and cannot be forced upon a rejecting party. Plaintiff has filed notice of his rejection to arbitration as of the filing of this Response[.]

*Id.* at 6.

In reply, Empire contends that Williams did not timely reject the Agreement and that, under the Agreement, neither Empire nor Williams can reject a *request for arbitration*; Williams alone had the ability to reject the Agreement and he had to do so within 10 days after the date of the agreement.

B

As stated above, because of the strong presumption in favor of arbitration, the party opposing a motion to compel arbitration bears the burden of proving that the agreement is invalid. *Carter*, 362 F.3d at 297. Williams has not met this burden.

Williams has not established that he rejected the arbitration clause, "as warranted under the Agreement." P. Br. 4. The Note provided Williams the ability to reject the Agreement, but he was required to do so by sending a "Rejection Notice" within ten days after the date of the Agreement. The Agreement is dated March 23, 2023. It is undisputed that Williams did not send a "Rejection Notice" by April 2, 2023.

- 8 -

Nor has Williams established that the Agreement is invalid because it is "permissive." Under Texas law,[5] "[a]rbitration is permissive when the agreement to arbitrate requires both parties to subsequently agree to submit the issue to arbitration with the option of rejecting arbitration." *Tex. Health Res. v. Kruse*, 2014 WL 3408636, at *3 (Tex. App. July 11, 2014, pet. denied) (mem. op.) (citation omitted).  Here, the Agreement provides, "[i]f either one of us requests arbitration, the Claim *must* be arbitrated."  D. App. 4 (emphasis added).  As Empire correctly argues, although Williams had the ability to reject the *Agreement* within 10 days after the date the Note was signed, neither Williams nor Empire is permitted, under the clear terms of the Agreement, to reject a subsequent request for arbitration if no Rejection Notice is timely sent (which, in this case, it was not).  The Agreement, by its clear terms, is mandatory, and Williams has not otherwise established that it is invalid.

* * *

Accordingly, the court grants Empire's motion to compel arbitration and stay proceedings. This case is stayed pending the completion of arbitration.[6] The clerk of court is directed to close this case statistically, without prejudice to reopening it statistically for

---

[5]The Note provides that "Federal law and Texas law apply to this contract."  D. App. 4.

[6]Because the arbitrator has been delegated the authority to decide the threshold question of arbitrability, completion of arbitration could occur at a preliminary stage if the arbitrator determines the dispute in question falls outside the scope of the Agreement.

further proceedings provided for under the FAA.

**SO ORDERED**.

June 18, 2024.

SIDNEY A. FITZWATER
SENIOR JUDGE